IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| JENG SEET CHAN,<br><br>　　　　Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General, U.S. Department of Justice; KRISTI NOEM, Secretary, Department of Homeland Security; TODD LYONS, Acting Director, Immigration and Customs Enforcement (ICE); BRIAN MCSHANE, Field Office Director, ICE Philadelphia Field Office; LEONARD ODDO, Warden, Moshannon Valley Processing Center, in their official capacities; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; U.S. DEPARTMENT OF JUSTICE; and U.S. EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>　　　　Respondents. | Civil Action No. 3:25-cv-00298<br><br>United States District Judge<br>Stephanie L. Haines<br><br>United States Magistrate Judge<br>Christopher B. Brown |

**REPORT AND RECOMMENDATION**

**Christopher B. Brown, United States Magistrate Judge**

**I.　　Recommendation**

Presently before the Court is a counseled petition for a writ of habeas corpus under 28 U.S.C. § 2241 filed on behalf of Petitioner, Jeng Seet Chan. He alleges his continued detention without a bond hearing violates the Due Process Clause of the

1

Fifth Amendment as applied to him and federal regulations. *See generally* ECF Nos. 1 and 9. For the reasons stated below, it is respectfully recommended the petition be granted in part and denied in part. It is recommended the petition be granted to the extent Chan is requesting he be provided an individualized bond hearing before a neutral immigration judge of the Executive Office of Immigration Review. To the extent Chan seeks any additional habeas relief, it is recommended that request be denied.

II.   Report

A.   Relevant Background

Chan is a 71-year old Chinese citizen who has resided in the United States since 1969. ECF No. 1 at ¶ 1. He was admitted upon entry to the United States on February 15, 1969 as a Lawful Permanent Resident ("LPR"). ECF No. 1-2. At the time, he was 15 years old. ECF No. 1 at ¶ 1.

On July 29, 1974, Chan pled guilty to second-degree murder in the Superior Court of the State of California, County of San Francisco. ECF No. 1-3 at 4.[1] On March 29, 1979, he was released on parole, having served approximately 5 years imprisonment. ECF No. 1-6 at 10. Upon his parole, he was immediately transferred to immigration custody, was released the next day on a $5,000 bond and, was served with a Notice to Appear before an Immigration Judge for a deportation hearing on April 3, 1979. ECF No. 1-1 at 3. The hearing was scheduled

---

[1]   Chan committed the murder on October 2, 1971, when he was 17 years old. ECF Nos. 1-3 at 4; 1-6 at 18.

2

on charges he was deportable under former Section 241(a)(4) of the INA, for being "convicted of a crime involving moral turpitude committed within five years after entry and sentenced to confinement therefor in a prison or corrective institution for a year or more, to wit, for the offense of Murder (Second Degree), in violation of Section 187 of the California Penal Code." ECF No. 1-1 at 4.

For reasons that aren't entirely clear on the current record, a deportation hearing was not held until August 31, 1993, more than fourteen years later. ECF No. 1-6. The Court suspects, but is not certain, the delay was due in part to Chan's incarceration on another criminal matter as the deportation hearing was held while Chan was in custody in New York, not California.[2] During the deportation hearing, the Immigration Judge explained that "[t]he Immigration Service typed up these charges against you in 1979 and they didn't get filed with the Immigration Court until 1990 but … I'm conducting a hearing now[.]" *Id*. at 15. At the conclusion of the hearing, the Immigration Judge found Chan was not eligible for a waiver of removal under Section 212(c) as his murder conviction was defined as an

---

[2] The BIA decision issued on December 9, 1993, refers to a second conviction in New York for an attempt to commit murder in the second degree, for which Chan was sentenced on January 26, 1982, to 12-1/2 year to 25 year sentence, which perhaps explains the delay. ECF No. 1-3 No. 4; *see also* ECF No. 1-6 at 27. The parties do not reference this conviction in their briefings and there is no other evidence in the record of a 1982 conviction for attempted murder. However, the Immigration Judge's decision, dated August 31, 1993, indicates the "deportation proceedings" were held at "Green Haven Correctional Facility" in Stormville, New York. ECF No. 1-6 at 3. From the record, it appears that the deportation charge was based solely on the 1974 second-degree murder conviction, although a reference was made to the 1982 conviction. *See id*. at 10, 48 ("Now I know that you're here in prison in New York, possibly here because of some other conviction but the Immigration Service has not referred to any New York convictions in this paper. This charge that you should be deported is based upon a California conviction for a murder committed October 2nd, 1971."). During the deportation hearing held in 1993, Chan testified that he had been continuously in prison since January 1982 on an attempted murder conviction. *Id*. at 27, 48.

aggravated felony and it was proper to apply the Immigration Act retroactively. *Id.* at 48-49. An Order of Removal was entered that day. ECF No. 1-7 at 2.

Chan filed a timely appeal to the Board of Immigration Appeals ("BIA"), which was dismissed on December 9, 1993. ECF No. 1-3. The BIA agreed with the Immigration Judge's decision to apply section 212(c) regarding aggravated felonies retroactively. *Id.* Chan remained in detention as the BIA found he was not "eligible for the privilege of voluntary departure in lieu of deportation[.]" *Id.* at 4.[3]

Chan remained in ICE custody for a substantial amount of time without being deported. ECF No. 1 at ¶ 33. Then, on December 5, 2002, Chan was released from ICE custody again after paying a $5,000 bond.[4] *Id.* He was released on an Order of Supervision ("OSUP") with instructions to report to a DHS field office in New York every three months. ECF No. 1-8 at 2. Through the decades, Chan has consistently reported as instructed. *Id.* at 3, 5-6, 10.

After more than 20 years on release, Chan filed a motion to the BIA seeking to reopen his deportation proceedings for the purpose of again applying for a waiver under section 212(c) on July 23, 2022, relying on the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289 (2001). ECF No. 1 at ¶ 34. In June 2023, the BIA

---

[3] Due to the delay in prosecuting the deportation case against Chan, the applicable law for deportation waivers had changed from its original version in effect at the time of Chan's 1974 plea conviction and the amended version in effect at the time of the immigration court's proceedings in 1993. *See* ECF No. 1 at ¶ 30 and ECF No. 12 at ¶¶ 13, 17, 18, 20. On June 25, 2001, the Supreme Court issued a decision in *INS v. St. Cyr*, holding that section 212(c), which eliminated a noncitizen's eligibility for waiver, imposed an impermissible retroactive effect. *INS v. St. Cyr*, 533 U.S. 289 (2001).

[4] It is not clear from the record when Chan was released from his New York sentence.

4

denied the motion as untimely. ECF No. 1-10. Chan then filed a petition for review with the United States Court of Appeals for the Second Circuit. ECF No. 1 at ¶ 36.

While his appeal with the Second Circuit was still was pending, Chan reported to the ICE office for his regularly scheduled check-in on February 18, 2025. *Id.* at ¶ 34. Although his appeal was pending, at that appointment he was placed in immigration custody and detained. *Id.* He was then transferred to Moshannon Valley Processing Center, an immigration detention facility located in the Western District of Pennsylvania, where he has been detained in DHS custody ever since. *Id.*

On April 18, 2025, the Court of Appeals for the Second Circuit vacated the 2023 denial by the BIA of Chan's motion to reopen and remanded the case to the BIA with instructions for the "BIA to issue a new decision on Petitioner's motion to reopen after further examination of Petitioner's *nunc pro tunc* argument." ECF No. 1-11. The BIA then reopened Chan's deportation proceedings and remanded the case back to the immigration court for the "Immigration Judge to nunc pro tunc assess the respondent's eligibility for section 212(c) relief." ECF No. 1-12 at 3. Following the remand, Chan's "deportation proceedings continued in the immigration court first with a master hearing held on October 8, 2025, then another master hearing held on October 20, 2025. An individual merits hearing has been scheduled for December 23, 2025." ECF No. 13 at 1. According to Petitioner's status report, ECF No. 18, Chan's individual merits hearing, which was originally scheduled for December 23, 2025, was advanced to December 19, 2025. After

5

approximately an hour and a half, the hearing was "continued to a later unknown date sometimes next year."  ECF No. 18.

### B.   Federal Habeas Proceedings

On September 15, 2025, counsel for Chan filed the instant habeas petition under 28 U.S.C. § 2241.  ECF No. 1.  Chan contends his detention without a bond hearing violates his rights under the Due Process Clause of the Fifth Amendment of the United States, as well as the Administrative Procedure Act ("APA").  The Government[5] filed a response, ECF No. 7, to which Chan filed a Reply, ECF No. 9, and a Sur-Reply, ECF No. 12.  The Government then filed a Response to the Sur-Reply. ECF No. 14.

The matter is fully briefed and ripe for disposition.  For the reasons below, the undersigned finds Chan's prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment.  It is, therefore, recommended that an order be issued providing Chan with a bond hearing before a neutral immigration judge of the Executive Office of Immigration Review.

## III.   Jurisdiction

Title 28, United States Code, Section 2241, grants federal courts the authority to hear habeas corpus petitions by noncitizens challenging the lawfulness or constitutionality of their detention by ICE.  *Jennings v. Rodriguez*, 583 U.S. 281,

---

[5]   When used in this Memorandum Opinion, "Government" refers to the federal entities and officials named as respondents in the petition.

6

292-96 (2018); *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Due to the BIA's remand, there is no final deportation order against Chan. ECF No. 1, ¶ 42. Accordingly, the Court has jurisdiction as Chan does not challenge any removal order. Instead, he challenges the constitutionality of his current detention.

IV. **Discussion**

Chan contends that his ongoing detention since February 18, 2025 without a bond hearing is unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment. ECF No. 1 at 12 – 15. He requests an order either requiring his immediate release or an individualized bond hearing before an immigration judge. *Id.* at 16. The Government argues Chan's petition should be denied because he is being detained under 8 U.S.C. § 1226(c), which requires the detention of certain noncitizens on statutorily defined criminal or national security grounds during their removal proceedings. Chan replies that he is not subject to mandatory detention because "the law in effect at the time" of his 1974 conviction "allowed a waiver of deportation for LPRs, such as Petitioner, and under the text of that original version, [his] criminal conviction did not disqualify him from seeking such a waiver." ECF No. 1 at 6. In turn, the Government responds that it "has the authority to detain aliens under the statute so long as the Government has 'reason to believe' that they have committed a covered crime." ECF No. 14 at 2 (quoting *Wahi v. Pittman*, 2025 WL 62914, at *2 (D.N.J. Jan. 8, 2025) (citing *Ojo v. Warden*

7

*Elizabeth Detention Center*, 808 F. App'x 61 (3d Cir. 2020)).  And, "so long as the government has reason to believe that an alien has committed a covered offense '[w]hether [a] conviction constitutes an aggravated felony 'as a definitive legal matter' is irrelevant for purposes' of § 1226(c)."  ECF No. 14 at 2 (quoting *Ojo*, 808 F. App'x at 64).

      **A.**    **Under the Current Version of § 1226(c) There is No Statutory Basis to Order Chan's Release Or a Bond Hearing**

With the understanding that Chan is detained under 1226(c), in light of his 1974 conviction for second-degree murder, his detention is mandatory under the statute.  Title 8, United States Code, section 1226, distinguishes between two categories of removable noncitizens:  those held under section 1226(a) who may be released on conditional parole, and those held under section 1226(c), which permits conditional parole only if release is necessary for witness protection purposes and the noncitizen can demonstrate they are neither a danger to their community nor a flight risk.  *See Jennings v. Rodriguez*, 583 U.S. 281, 288-89 (2018).  "[A]n alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings."  *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 214 (3d Cir. 2018) *abrogated on other grounds by Johnson v. Arteaga-Martinez,* 596 U.S. 573 (2022).  But Section 1226(c)'s mandatory detention of certain persons, including noncitizens convicted of certain enumerated crimes, does not require a hearing to begin or continue an alien's detention under that statute.  *See* 8 U.S.C. § 1226(c); *see also Jennings*, 583 U.S. at 288.  Under section 1226(c), the Government

is required to detain certain noncitizens pending a final removal decision. *See Jennings*, 583 U.S. at 303.

### B.    Chan is Nonetheless Entitled to Habeas Relief

Presuming that the Government's argument is correct and Chan's detention is under § 1226(c), *Jennings* does not prevent the Court from awarding habeas relief where Chan's detention without a bond hearing has become so unduly prolonged that it renders § 1226(c) unconstitutional as applied to him.

The Due Process Clause of the Fifth Amendment to the United States Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  It is settled law that the Due Process clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas,* 533 U.S. at 693. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects." *Id.* at 690.

In this case, Chan argues his prolonged detention without a bond hearing constitutes a violation of due process.   The undersigned agrees.[6]

---

6    Chan argues he qualifies for release pursuant to *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020), and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). ECF No. 19 at 6.  The core holding of  *Zadvydas*, however, deals with detention **after** a final order, although some courts have extended the *Zadvydas* principles to prolonged pre-removal detention. Because Chan is not subject to a final order of removal, the undersigned will proceed to analyze Chan's claim of prolonged detention only under *German Santos.*

In *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210 (3d Cir. 2020), the Court of Appeals for the Third Circuit recognized that "an alien lawfully present but detained under § 1226(c) can still challenge his detention under the Due Process Clause [of the Fifth Amendment]." The determination of whether Chan's prolonged detention is unreasonable is a "highly fact-specific inquiry." *German Santos*, 965 F.3d at 210 (internal citations and quotation marks omitted). To aid in this inquiry, the Court of Appeals for the Third Circuit has identified four factors for consideration: (1) the duration of the petitioner's detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of the petitioner's confinement. *Id.* at 212. Chan argues the four *German Santos* factors favor his request for a bond hearing; the Government, disagrees. These factors will be considered in order.

### i.  Duration:

To begin, the first and most important factor – the length of detention – weighs in Chan's favor. He has been detained continuously since February 18, 2025 – nearing 11 months as of this writing. The Government previously argued at the time of its submission in November 2025 that "there is nothing unreasonable about Petitioner's roughly [then] nine months in custody." ECF No. 14 at 6.

The undersigned finds Chan's "roughly eleven months" detention without a bond hearing falls well within the range where courts have held that delays start to become unreasonable. *See Zadvydas v. Davis*, 53 U.S. 678, 701 (2001) (prescribing the presumptively reasonable time period as six months); *Jennings v. Rodriguez*,

10

138 S. Ct. 830 (2018); [7] *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F. 3d 469, 478 (3d Cir. 2015) (six-month to one-year period triggered a bond hearing)); *see also Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011) (mandatory detention becomes "more and more suspect" after five months), *overruled on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Accordingly, this factor weighs in favor of granting habeas relief.

### ii.     Likelihood of Continued Detention:

The second factor – the likelihood of continued detention – also weighs in favor of Chan. Here, the habeas court must consider "whether the detention is likely to continue." *German Santos*, 965 F.3d at 211. When a noncitizen's removal proceedings "are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id*. The Government argues "while Petitioner's detention is likely to continue during the pendency of his removal proceedings, the proceedings are progressing, and Petitioner's individual [merits] hearing is scheduled for December 23, 2025. And if he is ordered removed, he will be subject to detention under § 1231(a)[8] once his removal order becomes final." ECF No. 14 at 7.

---

[7]     In *Jennings*, the Supreme Court rejected the conclusion that § 1226(c) contained an implicit reasonableness limitation. However, the *Jennings* decision did not call into question the constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long.

[8]     Title 8, United States Code, § 1231(a) requires mandatory detention of a noncitizen who has been ordered removed from the United States.

11

Here, Chan was scheduled for a merits hearing on December 23, 2025. The hearing actually occurred on December 19th and was continued to an unknown date in the future. Therefore, an immigration judge has yet to resolve whether Chan is removable and or has any defenses thereto. It is thus unknown when the immigration judge will ultimately issue a decision and whether that decision could be delayed by an appeal from either party. Lastly, according to Chan, even were he ordered to be deported by the immigration judge, the Government is unable to deport him as "China has refused to issue travel documents" and thus his detention would continue into the foreseeable future. ECF No. 12 at 10-11; ECF No. 12-3.

Given these facts, the undersigned finds this factor also weighs heavily in favor of granting habeas relief.

### iii. Reason for Delay:

The third factor – the reasons for the delay – is neutral. Here, the habeas court must consider "the reasons for the delay, such as a detainee's request for continuances" and must "ask whether either party made careless or bad-faith 'errors in the proceedings that cause[d] unnecessary delay." *German Santos*, 965 F.3d at 211 (quoting *Diop*, 656 F.3d at 234).

Courts are not to "hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings" because delays while he exercises the rights afforded to him by statute cannot be held against him. *German Santos*, 965 F.3d at 211 (citing *Chavez-Alvarez*, 783 F.3d

at 476-77). Similarly, any legal errors by the Government should not be held against the Government unless there is evidence of carelessness or bad faith. *Id*.

The Government argues this factor weighs in its favor or is, at worst, neutral. ECF No. 14 at 7. The Government contends it has not taken any unnecessary action to prolong Chan's detention, his immigration case has been steadily progressing, and the Government has not caused any unnecessary and undue delay. *Id*. at 7-8.

Here, the undersigned finds the record does not support the conclusion that either party is responsible for the sort of unreasonable or bad faith delays contemplated by the Court of Appeals in *German Santos*. As a result, this factor is neutral.

### iv. Conditions of Confinement:

The fourth and final factor – whether the conditions of Chan's confinement are "meaningfully different" from criminal punishment – favors Chan. As explained above, Chan has been detained at MVPC for near 11 months. He has submitted a declaration, subject to penalty of perjury, in which he asserts the conditions at MVPC are very much like prison. ECF No. 12-1. These conditions include

- limited access to medical care, including no access to medication and treatment for his diabetes and various heart conditions, *id*. at ¶ 3;
- ongoing violent interactions between detainees and prison guards, *id*. at ¶ 4;
- lack of sleep due to noise and fighting nightly, *id*. at ¶ 5;

13

- being housed in a crowded unit with more than 60 people in his unit, alongside high security individuals with a wide range of criminal convictions, *id.* at ¶ 7;

- being forced to use the toilet in the open where others can see and come in contact with him, *id.* at ¶ 8;

- being forced to wear a uniform, *id.* at ¶ 9;

- restricted privileges due to his security status, *id.* at ¶ 10;

- limited access to phone calls and to his attorney, *id.* at ¶¶ 12 and 13;

- inedible and stale and stale food, and no food that is "considerate of my diabetic condition, aggravating my ailment," *id.* at ¶ 14;

- restricted to his pod for about 20 hours a day, *id.* at ¶ 15; and

- will be placed in solitary confinement for disciplinary infractions, *id.* at ¶ 16.

The Government responds that MVPC only houses immigration detainees and Chan is not "detained in *prison* alongside convicted criminals." ECF No. 14 at 8 (quoting *German Santos*, 965 F.3d at 212-13 (emphasis added)). Chan "is being held at an immigration-specific processing center, in accordance with the INA, while his immigration case proceeds, and any removal is finalized. In addition to having access to 'televisions, telephones, and tablets,' detainees at MV[PC] 'are afforded four hours of outdoor recreation a day.'" *Id.*

The Court finds Chan, who is detained and not free to leave MVPC, has provided sufficient, persuasive evidence in his declaration that his conditions of confinement are akin to carceral conditions. Accordingly, this factor weighs in favor of granting habeas relief.

In sum, three factors – the duration of detention, the likelihood of continued detention, and the detainee's conditions of confinement – weigh in favor of granting habeas relief, and one factor – the reasons for the delay – is neutral.[9]

Chan has shown that the factors set forth in *German Santos* balance in favor of the conclusion that his detention under 8 U.S.C. § 1226(c) without an individualized bond hearing has become unreasonable and that his continued detention with no process at all, violates his rights under the Due Process Clause of the Fifth Amendment.

**V.    Conclusion**

For all foregoing reasons, it is respectfully recommended the petition be granted in part and denied in part.  It is recommended the petition be conditionally granted to the extent Chan is requesting he be provided a bond hearing before a neutral immigration judge of the Executive Office of Immigration Review.  To the extent Chan seeks any additional habeas relief, it is recommended same be denied.  The Court reiterates is not making any recommendation whatsoever regarding Chan's ultimate detention or release.  Rather the Court recommends, after 11 months in immigration custody and no clear end to removal proceedings in sight, that Chan's detention has been unduly prolonged and he is therefore entitled to a bond hearing.  At such a hearing another judge can decide the issue of detention or

---

[9]    Because the undersigned is recommending Chan's petition be granted on due process grounds, it is not necessary to reach Chan's additional argument that his detention also violates the Administrative Procedure Act.

15

release presumably based on many factors, including but not limited to, Chan's criminal history, his age, his amenability to supervision while on immigration parole, and the risk posed by his release. Affording such process, after such a prolonged detention, is consistent with the Fifth Amendment's guarantees.

A certificate of appealability is not required for federal detainees seeking relief under Section 2241. *Muza v. Werlinger*, 415 F. App'x 355, 357 n.1 (3d Cir. 2011). *See also* 28 U.S.C. § 2253(c)(1). Therefore, it is not necessary to determine whether one should be issued here.

Any party is permitted to file written specific Objections to this Report and Recommendation to the assigned United States District Judge. In accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b)(2), and LCvR 72.D.2, written objections, if any, must be filed by **January 28, 2026**. The parties are cautioned that failure to file Objections within this timeframe "will waive the right to appeal." *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011) (quoting *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir. 1983)). *See also Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (describing standard of appellate review when no timely and specific objections are filed as limited to review for plain error).

DATED this 14th day of January, 2026.

                                              BY THE COURT:

                                              <u>s/Christopher B. Brown</u>
                                              Christopher B. Brown
                                              United States Magistrate Judge

cc: All Counsel of Record
(via ECF electronic notification)

17